# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| VERNON REED, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:10-2664 |
| | § | |
| LIBERTY LIFE ASSURANCE | § | |
| COMPANY OF BOSTON, | § | |
| Administrator of the Carrols | § | |
| Corporation's Long Term Group | § | |
| Disability Income Policy, | § | |
|     Defendant. | § | |

## **MEMORANDUM AND ORDER**

Plaintiff Vernon Reed filed this ERISA case seeking past and future disability benefits.  Defendant Liberty Life Assurance Company of Boston ("Liberty Life"), as Administrator of the Carrols Corporation's Long Term Group Disability Income Policy, filed an answer and counterclaim [Doc. # 5].  Reed now has filed a "Motion to Dismiss Defendant's Counterclaims under FRCP Rule 12(b)(6)" [Doc. # 8] ("Motion"), and Defendant has responded [Doc. # 12] ("Response").  The Motion is ripe for decision.  Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that the Motion should be **denied**.

## I. BACKGROUND

Reed brought this action seeking disability benefits under a disability insurance policy underwritten by Liberty Life. Reed previously worked at Taco Cabana as a manager. Because of his employment with Taco Cabana, Reed has been covered under the Liberty Life group disability benefits policy since November 1, 2001.

On December 24, 2006, Plaintiff injured his right knee, and has not worked since. He states that he suffered a horizontal tear involving the interior articular surface of the posterior horn of the lateral meniscus. Reed filed for, and was granted, short-term disability benefits from Liberty Life. He also filed for long-term disability benefits, claiming total disability from the performance of his own or any other occupation. Liberty Life initially granted the long-term benefits but later denied further benefits, and Reed administratively appealed the decision. On February 4, 2010, Liberty Life issued a final administrative decision denying Reed long-term disability benefits.

Reed also applied for disability benefits under Titles II and XVI of the Social Security Act. He was found by the Social Security Administration to be totally disabled, and was granted benefits under both programs.

On July 28, 2010, Reed filed this suit pursuant to 29 U.S.C. § 1132, claiming that Liberty Life has wrongfully denied him disability benefits. He seeks past and

future benefits, both short- and long-term.[1]  Liberty Life has filed a counterclaim, alleging that Reed received $9,390.12 in retroactive disability benefits from the Social Security Administration, creating an overpayment in benefits paid by Liberty Life for the same period of coverage.  Liberty Life claims that Reed is obligated to reimburse Liberty Life $9,390.12, in accordance with a written agreement signed by Reed, which provides:

> If Social Security awards benefits to me, I agree that Liberty Life has a first lien on all such benefits to the extent of any overpayment or debt, and I agree to hold all such Social Security benefits in a trust for the benefit of Liberty Life until the amount of Liberty Life's overpayment has been repaid in full.[2]

Reed entered into this agreement in consideration for Liberty Life paying him a disability benefit with no reduction for estimated Social Security benefits until the Social Security Administration made a determination in his case.  Reed admits that "under the terms of the plan, the plan has a right to offset Social Security benefits."[3]

Reed has moved to dismiss Liberty Life's counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[1]  Complaint [Doc. # 1].

[2]  Social Security/Reimbursement Agreement, dated Aug. 5, 2007 (Exhibit 1 to Response).

[3]  Motion, at 2.

## II.     RULE 12(b)(6) STANDARD

Traditionally, courts hold that a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim is viewed with disfavor and is rarely granted.[4] The Supreme Court has explained that in considering a motion to dismiss under Rule 12(b)(6), a complaint must be liberally construed in favor of the plaintiff and all well-pleaded facts taken as true.[5] Nevertheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[6] Legal conclusions "are not entitled to the assumption of truth,"[7] and although they "can provide the framework of a complaint, they must be supported by factual allegations."[8]

---

[4]   *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005).

[5]   *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[A] judge must accept as true all of the factual allegations contained in the complaint." (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (internal citations omitted))).

[6]   *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

[7]   *Id.* at 1950.

[8]   *Id.* "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[9] "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."[10] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11] The determination of "whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[12]  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[13] "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if

---

[9]  *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 570).

[10]  *Id.* at 1950.

[11]  *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556).

[12]  *Id.* at 1950.

[13]  *Id.* (quoting FED. R. CIV. P. 8(a)(2) (alteration added by *Iqbal*)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 556).

doubtful in fact)."[14] It is insufficient to plead facts that are "'merely consistent with' a defendant's liability."[15]

In considering a motion to dismiss, a court ordinarily must limit itself to the contents of the pleadings and attachments thereto.[16] Documents "that a defendant attaches to a motion to dismiss are [also] considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."[17] "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated."[18] These presumably are documents whose authenticity no party questions.

## III.  ANALYSIS

Liberty Life's counterclaim to recover an alleged overpayment of $9,390.12 is brought as a claim in equity for restitution or constructive trust, as unjust enrichment,

---

[14]   *Twombly*, 550 U.S. at 555 (internal citations omitted).

[15]   *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).

[16]   *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing FED. R. CIV. P. 12(b)(6)).

[17]   *Id.* at 498-99 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *see Kane Enters. v. MacGregor (USA), Inc.*, 322 F.3d 371, 374 (5th Cir. 2003).

[18]   *Collins*, 224 F.3d at 499.

and as breach of contract. Reed moves to dismiss the counterclaim on all three theories.

### A. Constructive Trust/Restitution

Liberty Life seeks to have a constructive trust imposed over benefits currently in Reed's possession that were paid by Social Security or Liberty Life, to recover the alleged overpayment of benefits by Liberty Life. Liberty Life claims this equitable relief under Section 502(a)(3) of ERISA,[19] codified at 29 U.S.C. 1132(a)(3). Reed argues that the counterclaim is a legal claim, not an equitable one, and therefore is not a permissible claim under Section 1132(a)(3).

Section 1132(a)(3) states that a fiduciary may bring a civil action for equitable relief:

> A civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.[20]

Courts have held that, under certain conditions, this provision allows a fiduciary to file a civil action to recover overpayments made to a beneficiary.[21]

---

[19] Employee Retirement Income Security Act (ERISA), 20 U.S.C. § 1001 *et seq*.

[20] 29 U.S.C. § 1132(a)(3).

[21] *See Chevron Corp. v. Barrett*, 2008 WL 296178, *6 (S.D. Tex. July 28, 2008)
(continued...)

In recent years the Supreme Court has issued several rulings on the scope of remedial power conferred by Section 1132(a)(3). In *Mertens v. Hewitt Associates*, the Court held that Section 1132(a)(3) permitted only "those categories of relief that were *typically* available in equity," and did not allow claims for compensatory damages.[22] In 2002, the Court held in *Great-West Life & Annuity Ins. Co. v. Knudson* that not all claims for "restitution" were equitable. "[F]or restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession."[23] The facts of *Knudson* involved an ERISA plan beneficiary (Knudson) who was injured in a car accident and whose medical expenses, in the amount of $411,157.11, were paid by Great-West Life & Annuity Insurance Company. Knudson filed a state court tort action against the vehicle manufacturer and other parties, which resulted in a negotiated settlement of $650,000. The state court settlement allocated $256,745.30 to a Special Needs Trust under the California probate code to provide for Knudson's medical care; $373,426 for attorneys' fees and costs; $5,000 to reimburse the California Medicaid program; and $13,828,70 for Great-West to satisfy past medical

---

[21]   (...continued)
       (Rosenthal, J.) (collecting cases).

[22]   *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 256 (1993) (emphasis original).

[23]   *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002).

expenses. Great-West then filed an ERISA action seeking full reimbursement from Knudson for the medical expenses it had paid. However, because the *Knudson* petitioners claimed entitlement to settlement proceeds in the possession of the Special Needs Trust, and not of the Knudsons, the Court held that the claim was not for equitable restitution:

> The basis for petitioners' claim is not that respondents hold particular funds that, in good conscience, belong to petitioners, but that petitioners are contractually entitled to *some* funds for benefits that they conferred. The kind of restitution that petitioners seek, therefore, is not equitable— the imposition of a constructive trust or equitable lien on particular property—but legal—the imposition of personal liability for the benefits that they conferred upon respondents.[24]

The *Knudson* Court concluded that, because the petitioners' claim for restitution was legal rather than equitable, the suit was not authorized under Section 1132(a)(3).[25]

In 2006, the Supreme Court decided *Sereboff v. Mid Atlantic Medical Servs., Inc.*[26] As in *Knudson*, the Court was faced with the question of whether a claim under Section 1132(a)(3) was equitable or legal. Also as in *Knudson*, the funds at issue were from a tort settlement, and the entity that had paid the beneficiaries' medical expenses was seeking reimbursement. However, unlike in *Knudson*, the funds sought by Mid

---

[24]   *Id.* (emphasis original).

[25]   *Id.* at 218.

[26]   547 U.S. 356 (2006).

Atlantic, an ERISA plan administrator, were "specifically identifiable" (*i.e.*, distinct from the beneficiaries' general assets) and "within the possession and control of the [beneficiaries]."[27] Based on this critical distinction, the *Sereboff* court concluded that Mid Atlantic could make a claim for an equitable lien on the relevant funds under Section 1132(a)(3).[28]

Reed argues that, under *Sereboff*, Liberty Life's claim for reimbursement is not equitable because Liberty Life seeks to recover from Reed's general assets, rather than from a particular fund. However, Liberty Life seeks an equitable lien on the Social Security benefits paid to Reed.[29] In *Sereboff*, the Supreme Court relied on the fact that the relevant benefits plan had "specifically identified a particular fund, distinct from the Sereboffs' general assets"—in particular, the Sereboffs' tort settlement funds—and the particular share of the fund to which the plan administrator was entitled.[30] Here, Liberty Life seeks reimbursement from the "particular fund" of the

---

[27]   *Id.* at 362-63; *see id.* at 364.

[28]   *Id.* at 364.

[29]   Reed does not dispute that he was awarded retroactive Social Security benefits, and further agrees that, "under the terms of the plan, the plan has a right to offset Social Security benefits." Motion, at 2.

[30]   *Sereboff*, 547 U.S. at 364.

Social Security benefits paid to Reed, and seeks a particular share as outlined in the parties' written agreement:

> If Social Security awards benefits to me, I agree that Liberty Life has a first lien on all such benefits to the extent of any overpayment or debt, and I agree to hold all such Social Security benefits in a trust for the benefit of Liberty Life until the amount of Liberty Life's overpayment has been repaid in full.[31]

This equitable claim is permitted under *Sereboff*.[32]

Because Liberty Life has properly stated a claim for equitable relief for constructive trust or restitution that is plausible on its face, Reed's motion to dismiss this claim is denied.

### B. Unjust Enrichment

Liberty Life seeks recovery from Reed "based on unjust enrichment of [Reed] by virtue of his retention of benefits from the Social Security Administration that he

---

[31] Social Security/Reimbursement Agreement, dated Aug. 5, 2007 (Exhibit 1 to Response).

[32] Liberty Life's counterclaim also satisfies the three-part inquiry set forth by the Fifth Circuit in 2003 to determine whether the requested relief is equitable: does plan seek to recover funds that (1) are specifically identifiable, (2) belong in good conscience to the plan, and (3) are within the possession and control of the beneficiary? *See Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough*, 354 F.3d 348, 356 (5th Cir. 2003). *Bombardier* relied upon *Knudson* in its analysis and, although it was decided before *Sereboff*, its three-part inquiry is consistent with the *Sereboff* decision.

is obligated to pay to Liberty Life."[33] Reed argues that Liberty Life's unjust enrichment claim is based on state law and therefore preempted by ERISA.[34] Liberty Life responds that the claim seeks an equitable remedy, as permitted in *Sereboff*.

*Sereboff* held that, when a plan seeks restitution from a beneficiary in possession of particular, identifiable funds, the suit sounds in equity.[35] Because Liberty Life has sufficiently pleaded an unjust enrichment claim, Reed's motion to dismiss this claim at this stage of the litigation is denied.

## C. **Breach of Contract**

Reed further argues that Liberty Life's counterclaim for breach of contract is preempted by ERISA. Liberty Life has brought its breach of contract claim in the alternative to its equitable claims under ERISA.[36] The Supreme Court has not yet resolved the issue of whether a fiduciary may bring a state-law breach of contract

---

[33] Liberty Life's Answer and Counterclaim [Doc. # 5], at 10.

[34] 29 U.S.C. § 1144; *Aetna Health Inc v. Davila*, 542 U.S. 200, 209 (2004) (any state law caus of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy is preempted).

[35] *Sereboff*, 547 U.S. at 363, 368; *Horton*, 513 F.3d at 1226-27.

[36] FED. R. CIV. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.").

action without running afoul of ERISA's preemption provision.[37]  The Court therefore declines to dismiss as a matter of law Liberty Life's breach of contract claim at this time.

## IV.  CONCLUSION

For all of the foregoing reasons, it is hereby

**ORDERED** that Plaintiff's "Motion to Dismiss Defendant's Counterclaims under FRCP Rule 12(b)(6)" [Doc. # 8] is **DENIED**.

SIGNED at Houston, Texas, this **14th** day of **December, 2010**.

_____
Nancy F. Atlas
United States District Judge

---

[37] *Knudson*, 534 U.S. at 220; *Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 547 (7th Cir. 2003).